Justin L. James (15167)
Jordan Pate (17634)
James Dodge Russell & Stephens, P.C.
10 West Broadway, Suite 400
Salt Lake City, Utah 84101
Telephone:  801.363.6363
Email: jjames@jdrslaw.com
       jpate@jdrslaw.com

*Counsel for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| JASON BROWN, as trustee of the JASON & NICHOLE BROWN TRUST, JARED YOUNG as trustee of THE VALIANT TRUST, ALAN SWICK, an individual TYMICK ENTERPRISES, a Utah limited liability company, MABO HOLDINGS, an Idaho limited liability company, JEREMY ROSENVALL, an individual, and REED PROBST, trustee of the REED R. PROBST TRUST; DANE COVINGTON, an individual<br><br>    *Plaintiffs*,<br><br>v.<br><br>JON CHENEY, an individual; JEREMY WHITT, an individual.<br><br>    *Defendant*. | **COMPLAINT**<br><br>Judge David Barlow<br><br>Case No. 2:24-cv-00129-DBB |

Plaintiffs Jason Brown as trustee of the Jason & Nichole Brown Trust ("Brown"), Jared Young, as trustee of The Valiant Trust ("Young"), Alan Swick ("Swick"), Tymick Enterprises, LLC ("Mickelsen"), MABO Holdings, LLC ("Fransen"), Jeremy Rosenvall ("Rosenvall"), Dane Covington ("Covington") and Reed Probst on behalf of the Reed R. Probst Trust ("Probst") (collectively the "Investors"), by and through counsel, alleges and complains of Defendants Jon

1

Cheney ("Cheney") and Jeremey Whitt ("Whitt," collectively with Cheney, "Defendants") as follows:

**Parties, Jurisdiction, and Venue**

1. Brown is a trustee of the Jason & Nichole Brown Trust, a Utah Trust.

2. Swick is an individual residing in Utah County.

3. Mickelsen is a Utah limited liability company with its principal place of business in Utah County.

4. Rosenvall is an individual residing in Washington State.

5. Fransen is an Idaho limited liability company with its principal place of business in Idaho.

6. Young is a trustee of The Valiant Trust, a Utah trust.

7. Probst is trustee of the Reed R. Probst Trust, a Virgina trust.

8. Covington is an individual residing in Florida.

9. Cheney is an individual residing in Utah County.

10. Whitt is an individual residing in Florida.

11. Pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 78aa, this Court has original subject matter jurisdiction over the claims alleged in this action arising under the laws of the United States, including specifically Plaintiffs' claims asserted under 15 U.S.C. § 78j(b) (including S.E.C. Rule 10b-5 promulgated thereunder and codified at 17 C.F.F §240.10b-5), 15 U.S.C. §78t(a), and 15 U.S.C. §77l.

12. The Court has supplemental jurisdiction over the claims asserted herein under state

law pursuant to 28 U.S.C. § 1367 because such claims are so related to the claims arising under the laws of the United States that they form part of the same case or controversy under Article III of the United States Constitution.

13.     Venue is appropriate in this forum pursuant to 28 U.S.C § 1391 (b)(2) and 15 U.S.C. § 78aa.

14.     In connection with the conduct alleged in this Complaint, Defendants directly and indirectly used the means and instruments of interstate commerce, including mail, telephone, and internet communications.

## GENERAL ALLEGATIONS

15.     In the Fall of 2021, Cheney and Whitt approached the Investors on multiple occasions, in Utah County, to induced them, through misrepresentations, to invest significant sums of money in his company Seek XR, Inc.

16.     Specifically, in or about August, September, October and November of 2021, Cheney approached each Investor, more than once, about loaning or investing money in his company Seek XR through a convertible note (a loan that would be converted to equity).

17.     In order to induce each Investor to invest money in Seek XR, Defendants represented to each Investor during this time that Seek XR had received multiple offers to purchase Seek XR, from credible and independent outside investors and had received offers ranging from $40 Million (Snap Chat) to $60 Million (Cloudinary) and then another offer from Snap Chat for $65 Million.

18.     Defendants further claimed that they had rejected such offers.

19.     Defendants, however, represented that they thought the valuations were low and that believed the company would be valued at over $130 Million within six months.

3

20.     Based on Defendants' representations that Seek XR had received offers from credible institutions, including Snap Chat and Cloudinary and that Seek XR's revenue forecasts showed that Seek XR's value would increase significantly over the next several months, Investors agreed to loan/invest money with Seek XR.

21.     Specifically, each Investor invested the following amounts:

  a.   Brown invested $250,000

  b.   Young invested $250,000;

  c.   Swick invested $100,000;

  d.   Mickelsen invested $150,000;

  e.   Fransen invested $50,000;

  f.   Probst invested $100,000;

  g.   Rosenvall invested $150,00;

  h.   Covington invested $50,000

22.     In total, the Investors invested $1,10,000 in Seek XR based on Cheney's representation of Seek XR's value.

23.     Seek XR sent each Investor a "Convertible Promissory Note." An exemplar note is attached as Exhibit 1.

24.     Under the Convertible Note, each Investor agreed that "[i]n the event that [Seek XR] issue[d] and s[old] share of its Equity Securities to [other] investors, on or before [the two year anniversary of the note] in an equity financing resulting in gross proceeds to the Company of at least One Million Dollars ($1,000,000)….then the outstanding principal balance of th[e] Note and any accrued but unpaid interest shall automatically convert in whole without any further action

by the [Investor] into such Equity Securities at a conversion price equal to one hundred percent (100.00%) of the per share price paid by the [other investors][.]"

25. The Note further defined "Equity Securities" to mean Seek XR's "preferred stock or any securities conferring the right to purchase [Seek XR's] preferred stock or securities convertible into, or exchangeable for…the company's preferred stock[.]" [*Id.* at p. 2].

## FIRST CAUSE OF ACTION
*Violations of Section 10(b) of the Securities Exchange Act and Rule 10b-5*

26. Investors incorporates each of the preceding paragraphs herein.

27. Investors investment in Seek XR was a security as defined in 15 US Code § 77b(a)(1) in that it involved investment in a common enterprise with the success of the venture dependent primarily upon the efforts of others. Further, the parties' agreements reflected that the investment was a security.

28. Defendants made untrue statements of material fact and omitted material facts necessary to make the statements not misleading, in violation of Rule 10b-5.

29. The material misrepresentations and omissions were made in connection with the offer to sell a security.

30. Such material misrepresentations and omissions include Defendants' representations that Seek XR had received offers from Cloudinary and Snap Finances that placed Seek XR's above $40 Million. Defendants also failed to correct such misrepresentations despite knowing the falsity of the representations.

31. Defendants made the material misrepresentations and omissions through both verbal and written correspondence with Investors.

32. Defendants material misrepresentations and omissions were made through the means or instruments of communication in interstate commerce or the mails—including telephone lines, email transmission over the internet, and the United States Postal Service.

33. Defendants acted knowingly in making material misrepresentations and omissions or should have known but acted with severe recklessness as to their truth.

34. The foregoing misrepresentations and omissions were material to each of the Investors' decision to invest in Seek XR. Plaintiffs would not have invested had they known the true facts—Seek XR had not received a valuation anywhere close to the amounts represented and had not received valuations from any reputable business.

35. The misrepresentations and omissions caused Investors to suffer extensive damages in an amount to be proven at trial, but in no event less than the amount of their investment.

## SECOND CAUSE OF ACTION
### *Breach of the Covenant of Good Faith and Fair Dealing*

36. Investors incorporates each of the preceding paragraphs herein.

37. Investors investment in Seek XR was a security as defined in 15 US Code § 77b(a)(1) in that it involved investment in a common enterprise with the success of the venture dependent primarily upon the efforts of others. Further, the parties' agreements reflected that the investment was a security.

38. The interest in Seek XR were not registered by the filing of a registration statement.

39. During the time in which the Defendants used means or instruments of communication in interstate commerce or the mails, including telephone lines, cellular telephone signals, the internet, email transmissions, and, upon information and belief, the United States Postal Service—for the purpose of offering, selling, and delivering interests in Seek XR, in violation of Sections 5(a) and 5(c) of the Securities Act.

40. Based on Defendants' violation, Defendants are liable in an amount equal to the consideration paid for such security with interest thereon or for damages.

41. Investors are also entitled to pre- and post-judgment interest, attorney fees as allowed by contract or law, costs, and such other relief as the Court may deem appropriate.

### THIRD CAUSE OF ACTION
*State Securities Fraud – Utah Code §61-1-1 et. Seq.*

42. Investors incorporates each of the preceding paragraphs herein.

43. Under the Utah Uniform Securities Act, Defendants were required prohibited from making "any untrue statement of a material fact or omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading" and other obligations. *See* Utah Code 61-1-1 et. Seq.

44. Defendants made statements and omitted facts in violation of Utah Code §61-1-1.

45. Investors relied upon the statements and omissions in investing in Seek XR.

46. Pursuant to Utah Code § 60-1-22 Defendants are liable for the amount of Investor's investments, together with 12% interest per year, reasonable attorney fees, and costs.

47. Additionally, because Defendants misrepresentations and omissions were intentional or reckless or intentional, the Court should award Investors amount equal to three times their investment amounts, interest, costs, and attorney fees. *See* Utah Code § 61-1-22(2).

### FOURTH CAUSE OF ACTION
*Fraud*

48. Investors incorporates each of the preceding paragraphs herein.

49. Defendants made false statements about material facts regarding the valuations of Seek XR.

50. Defendants made the statements knowing that they were false.

7

51. Alternatively, Defendants made the statements recklessly and without regard for their truth.

52. Defendants intended that the Investors rely on the statements.

53. Investors reasonably relied on the statements in deciding to invest in Seek XR and provider their Investments.

54. As a result of Defendants conduct, Investors suffered damages in an amount to be proven at trial.

## FIFTH CAUSE OF ACTION
*Negligent Misrepresentation*

55. Investors incorporates each of the preceding paragraphs herein.

56. Defendants had a duty to inspect and to disclose fully and fairly facts materially related to the financial valuations and value of Seek XR.

57. Defendants made false representations to Plaintiffs as detailed herein.

58. Defendants owed a duty of reasonable care to Plaintiffs independent of any contractual obligation.

59. Defendants knew such representations were false or were negligent in making such representations.

60. Defendants were negligent in representing the value of Seek XR.

61. Defendants knew or should have known the misrepresentations were false.

62. The Defendants made their misrepresentations in an effort to induce the Plaintiffs into investing in Seek XR.

63. The foregoing misrepresentations and omissions were material and were reasonably relied upon by Investors in making their investment.

64. As a result of Defendants' negligence, Plaintiffs have been damaged in an amount to be proven at trial.

## REQUEST FOR RELIEF

WHEREFORE, Investors requests judgment against Cheney and Whit, jointly and severally, as follows:

a. For actual damages in an amount to be determined at trial, but in no event less than $1,100,000;

b. For punitive or exemplary damages;

c. For statutory damages;

d. For consequential damages in an amount to be determined at trial;

e. For equitable relief as found appropriate by this court;

f. For costs and attorney fees; and

g. For such and other relief as the Court may deem just and appropriate.

DATED this 21st day of February 2024.

JAMES DODGE RUSSELL & STEPHENS, P.C.

*/s/ Justin L. James*
Justin L. James
Jordan Pate

*Attorneys for Plaintiffs*